Case number 22-1264, et al. Axel Protective Services, Inc. petitioner v. National Labor Relations Board. Ms. Mastroni for the petitioner, Mr. Jost for the respondent. All right, Ms. Mastroni, whenever you're ready, please proceed. All right, thank you. I'm Maura Mastroni from Littler Mendelsohn on behalf of Excel. So, as you know, I'm not going to rehash the briefs and decisions, but this case really hinges on the termination of a former employee of Excel, Mr. Mark Salopek, and he was a security guard for Excel for several years at a naval base in the state of Washington. He was terminated based on some events that occurred surrounding his communications with the Navy, reporting what he believed were alleged safety concerns. And so I think the first thing to address is whether this court can consider some of the arguments that we raised in our brief. I know that opposing counsel has argued that these are not properly before the court because they were not explicitly raised in our exceptions. And these two arguments have to do with whether Mr. Salopek's communications were protected under the Act, and if so, whether they lost the protection of the Act based on his failure to disclose an ongoing labor dispute. And we argue that these issues are properly before this court for a few reasons. 1, we did raise an issue with respect to whether Mr. Salopek's communications were protected under the Act in our exceptions. And this, these are where, where is that? In our exceptions. Where precisely in your exceptions? Or I'll give you the page number. So, page 40, I'm sorry, page 43 of our exceptions is where we start our argument about how Mr. Salopek's actions lost the protection of the Act. Okay, so while we did not explicit. I'm sorry, I don't know that those that this part of the exceptions goes specifically to that point though. Right, and I don't disagree with you there. We did not specifically address the 2 issues that we are advancing here. Our claim is that they are an extension of the argument that we did raise in our exceptions related to whether. How does this, how does what you said put the general counsel on notice that these are the claims that you're making. So, I mean, we weren't specific about it. I'm not, I'm not pretending that we were, but I think the, the. The idea is that they are an extension of what we argued and these issues were discussed. Is the test that is just an extension. Is that sufficient? Or doesn't it have to put them on notice that this is what you're arguing. And you're conceding that it doesn't correct. No, I'm conceding that we didn't specifically address these issues that were raised by the dissent and discussed at length by both the dissent and the majority. So, in that respect, the general counsel was on notice when we. Discuss these issues in our appeal, but the United food case. Well, precludes us from relying on just what the descent side. I'm sorry, I needed to it. So the fact that. A dissenting board member raise these issues is not sufficient under our United food precedent. And so I think that you need to argue that you did raise this. And all you're relying on are some general statements that it appears that you're conceding didn't put the general counsel on notice of these specific. Issues, I think reading. Our brief and our exceptions rather is clear that we did not specifically argue the 2 issues that the dissent discussed and that we have argued in our brief before this court. Okay, let me let me ask you about a different. Question is Excel arguing did Excel argue before the board. That was so disloyal that his actions came outside of protected activity. Is that what Excel is arguing? Before the board and in its exceptions. We had argued that his comments were either felt in 1 of those categories, sufficiently, just loyal maliciously untrue, or just said and done recklessly. So, our argument there was that they, his, his communications lost the protection of the act because of those reasons. So, because what he advanced in speaking with the Navy personnel was simply not true. And even if, you know, he, you know, he didn't know for sure that they weren't sure, which we dispute, but at at least his comments were said recklessly with regard to, you know, the actions that he had made. And so, that's why we argued that his comments were said recklessly with regard to the truth of what he was saying. So, that was just and disloyally. Do you do you think that disloyalty is a separate cause? For termination is that what we are. Well, I'm wondering if that's what you've argued if that's what you think is the standard. No, I don't think we were arguing that disloyalty was a separate cause for his termination, but under the law, if his communications were so disloyal or maliciously untrue or reckless, then they could lose the protection of the act. And that's what loyalty would be a separate grounds to it being maliciously untrue. To lose the yes, I would agree with you there. Yes. So it could be 1 of those 3 right? Reckless maliciously untrue or so disloyal to lose the protection. And so his his comments that, you know, the company had forged documents and was dishonest with the Navy, et cetera were comments that could be construed as disloyal. In addition to being maliciously untrue and or reckless. So, you've forfeited the disloyalty argument, but you did preserve the maliciously untrue argument. Correct no, I don't think we forfeited the disloyalty in terms of losing the protection of the act. I don't think we forfeited that argument. I think that's that goes along with argument that his communications were at least 1 of those fell into 1 of those categories, right? Either sufficiently disloyal maliciously untrue and or reckless. I'm sorry, did you make a specific argument about sufficiently disloyal? I thought your arguments relied on maliciously untrue. Yeah, I think that that was our, our focus that they were, um, well, we said we discussed them both being reckless and maliciously untrue. In our exceptions, right? But you didn't specifically talk about sufficiently disloyal. Um, okay, I think they, they all fell within that category. So, whether they were, um, you know, on the, the border of maliciously untrue, disloyal, um, at any rate, I'm just asking about what you argued. I don't think you made a specific argument about this loyalty. You are arguing that maliciously untrue is my recollection. We, we focused on maliciously untrue. So, I don't think you made a specific argument about this loyalty. I think you focused on maliciously untrue and reckless as well, and it seems to me that much of what was that at issue was not in fact untrue didn't Captain Terry concede that there was a lot of activity that was not authorized under Navy regulations, such as firearms tests in unapproved places, using equipment that the, that was not provided by the Navy, et cetera. Like, what exactly are you saying was untrue? The majority of his allegations about guards having qualified improperly were found to be untrue. I believe there were 2 allegations that he made that were substantiated the rest. Mr. Rake found to be unsubstantiated based on his investigation, including a review of documents and interview of numerous other security guards. But we don't rely on what Mr. Rake found. He was found to be biased. We should rely on what board found. I think we have to rely on the evidence in the record and the evidence in the record speaks for itself. And the fact that the, um, the found that he, that Mr. Rake was biased, it was simply a determination he made that didn't necessarily comport with the evidence in the record. In fact, we don't think there was any evidence in the record that Mr. Rake was biased. What about the statements that he made about Mr. Salopak? Um, I think that was his determination made based on his discussions with Mr. Salopak as part of his investigation. So, I'm sorry, are you, are you arguing that the ALJ was clearly erroneous or that his finding was not supported by the evidence when he found that Mr. Rake was biased? Yes, I think he, the evidence in the record did not support that Mr. Rake was biased against or held animus against Mr. Salopak based on the communications that he made. Okay, thank you. You're a little over, but we'll give you some rebuttal. Thank you. Mr. Jost. Good morning, Your Honors, and may it please the Court. My name is Micah Jost for the Labor Board. I'll begin by briefly addressing the 10E issues that were just discussed with regard to the requirement of specificity in raising these issues. The Nova case, which the employer cites in its reply brief at page 4, acknowledges that the employer does have to put the board on notice of the, quote, specific grounds for its objections. The employer did not do that here with regard to mutual aid and protection question or the loss of protection with regard to disclosure of a labor dispute, nor did it make any argument as to disloyalty. When it comes to disloyalty, if you examine their exceptions document, which is at Joint Appendix 122 to 128, you will not find the word disloyalty on those pages anywhere. There's no reference to it because they focused exclusively on the question of malicious falsity. Nothing in their brief in support expands on that. They do reference disloyalty in passing at page 44 of that document in a quote from the Valley Hospital decision, which simply sets forth the overarching standard. They never actually try to explain why that would apply here. Both the ALJ and the board discuss the loyalty point, which was raised, I mean, we looked at the brief that was presented before the board, which does mention the disloyalty point. And so it seems that they did raise that point before the board. And then the board does discuss it, makes a specific finding about it, as does the ALJ. Your Honor, the board addressed it because it was raised in a dissent. The board explained that it had not been raised by the employer. And there is simply nothing. Again, the exceptions document is where the employer has to begin to put the board on notice. It can expand on arguments that it's properly raised there in its brief in support. I understand that as to some of the actions, but some of the arguments. But what about the disloyalty point, that the disloyalty here took this outside the protections of the act? So disloyalty is a separate inquiry. The cases, this court's cases in Endicott and Hormel turn on disloyalty. They have nothing to do with malicious falsity. Similarly, Jefferson Standard doesn't touch on malicious falsity. It focuses on disloyalty. It is a separate issue. And the employer had to do more than reference the word disloyalty once in the middle of its brief, inciting a case from the board. It never addressed disloyalty in terms of any of the board's cases or this court's cases. And in that context, the 10 year decisions that we cite explain why the board was not on notice there. It's not enough. Do you think it was not urged before the board and forfeited before this court or just simply not urged before the board? Well, it's both, Your Honor. But as far as the first question, it's jurisdictional. And so if it wasn't urged before the board, nothing they could say before this court could resurrect the issue. Right. And when you look at cases like the Spectrum Health decision from this court and Persephone Hotel, which are both cited in our brief, this court has recognized that a broad objection, for example, to the to the remedy in its entirety does not preserve a sort of subset of argument. And Persephone Hotel, a vague reference to the ALJ not being allowed to amend the complaint, does not preserve a sub part of that argument based on statute of limitations, for example. So that's what we have here. At best, they made a reference to the overarching standard, but they never articulated an argument as to disloyalty. And in any event, the board addressed the issue because it was raised in the dissent. And as in DIRECTV, the board made findings which are supported by substantial evidence that nothing here was flagrantly disloyal or wholly incommensurate with any grievances the employees could have. In fact, this case is essentially on all fours with DIRECTV. The employees went to their employer first. They tried to resolve the issue in that way. Initially, they went to multiple people within their chain of command. And after that, they went to the next entity that they believed could help them. In doing so, they focused on issues relating to their working conditions. There's no evidence of critical timing or any sort of unusual damage the employer could have faced. And there is no evidence that they had any intent to harm the employer unnecessarily. In that regard, I would emphasize Joint Appendix 111 to 112, where the ALJ found essentially as a matter of credibility that these employees were genuinely motivated by their safety concerns. There is ample evidence in the record to support that. In particular, at Joint Appendix 420, 462, 463, the employees testify in a credible way about the genuine concerns they felt for their own safety, both based on the risk of ricochets, and other injuries that they might suffer at an unauthorized shooting location. And also, their concern that having employees lack sufficient qualification could put them in danger in the event of a critical incident. With regard to the question of whether this court can rely on Rake's findings, of course it cannot. What it has to defer to is the findings of the administrative law judge that the board adopted. And here, the board did find that Rake essentially conducted his investigation based on his animus toward these employees going over his head and putting him in a bad position, where the employer's own witnesses acknowledged that the employees had been shooting at unqualified locations for their qualifications, and that Rake was on notice and was fully aware of those behaviors. So in the end, only two issues are properly before the court here, only two board findings. And those are the finding that Mark Salopek's complaints were not maliciously false, and the finding that the employer was motivated by those complaints to discharge him. On both of those points, the employer's own statements in its briefs and from its witnesses are fatal to its challenges. On the first point, there can be no malicious falsity because Excel admitted that the complaints were true. First, we have operations manager Terry testifying that Excel held those qualification shoots at other locations. Second, he confirmed that there is a document on which Excel misrepresented where that took place. That's a joint appendix 261, and his admissions are at 610 and 612. And Excel admitted that as well in its brief in support before the board, which is at page 45 of that document. Third, we have Pallas's admissions that he altered targets. And finally, we have Excel admitting in its opening brief that Officer Kohler received weapons she had not qualified for after she attended a gravel pit shoot. She explains in her statement at joint appendix 244 that that did take place at a gravel pit. As far as we do, what do we do if we conclude that many of the allegations were true, but maybe some were false? Do we then go on and assess, look at the false ones and assess maliciousness? If if there are any, or is it just a gestalt kind of, you know, overall, there's a lot of truth in everything the employee was saying? Your Honor, I think when the court looks at its decision in Direct TV, the focus there was on essentially whether the core allegations, whether the essential substance of the complaints were were true. And in that case, the court looked at the complaints overall, looked at the issues that the employees had raised, and it was clear that they were had an essential truth to them. I think the same is true for the Encore decision. The court looked at the statements that the employee raised with regard to meter bases catching fire and said these these were perhaps not phrased as clearly as they could have been, but they are in their essence true. That is certainly the case here. The employer hasn't shown that anything was false. There may be a date that was ultimately corrected after being initially incorrect, but that sort of error just can't possibly qualify for malicious falsity, even if they had established falsity as to any particular point. Then the next inquiry would be whether it was knowingly knowingly false or whether Salopek was reckless as to the truth or falsity. And there the ALJ looked at the credible testimony of these employees, explaining how they reached these complaints, how they talked amongst themselves, how they checked each other's work, how they relied on each other's statements and found that they were acting in good faith to raise what they believe to be true complaints. The employer, again, as to its ultimate unlawful motivation, it conceded in its briefs and in its own documentation and in the statements of its witnesses that it was motivated by this activity. And I haven't heard any any counter argument on that note today. As many of the cases we cite explain, the DHSC case, Dardsmark, and even the Aroostook case that the employer brings up, those are decisions from this court recognizing that an employer cannot use an employee's decision to go outside the chain of command in order to punish them for their protected activity. So, in view of the the board's well-supported, substantial, excuse me, well-supported findings and the substantial evidence that we've discussed, we ask for enforcement of the court's order in full. If there are any further questions. Thank you, Mr. Jost. Thank you. Is Mastroni rebuttal? Yes, I think just briefly. Just with respect to the notion that the majority of Mr. Salomak's allegations were true, I just think that's not accurate. And I think the record shows that we addressed this at length in our exceptions, starting on page 44. What's your best illustration of a statement that was obviously materially false? Well, I think that just 1 of his biggest claims was that. Excel allowed officers to qualify at gravel pit ranges on several occasions. That was really the whole crux of his his complaint here that they were letting these officers qualify at gravel pit ranges and this was, you know. Not not in line with what the Navy would have permitted and that's very I'm sorry. Didn't Captain Terry testify that that did in fact. Not that employees were able to qualify there and in fact, they had 1, only 1 instance of this occurring. There was 1 document to support this. And so when Mr. Salomak made this allegation, he was aware of only 1. Specific instance where this did occur. So, why isn't that 1 instance support the finding? It doesn't support the, I'm not sure we mean the, the finding. I don't think it supports his allegation that. I'm sorry, I guess we're reviewing whether substantial evidence supported the board's decision. And it rejected the argument that there were, I guess, maliciously false statements. And when judge has assessed you, what is your best evidence of a maliciously false statement? You refer to gravel pit qualification tests. But there's evidence in the record that Captain Terry, who works for your client. Acknowledged that there were gravel qualification tests. And you just conceded that there's a document to support that there will gravel pit qualification tests. So, why is that? All right. So why isn't that enough to sustain the finding? Well, 1st of all, that's only 1 instance of his allegations that did not turn out to be true because he said this happened on several occasions and there's 1 document showing that it occurred once. But there are also numerous other there was other. I'm sorry. There was evidence of other 1s. There's 1 document about 1 incident, but there was testimony that it happens. On more than 1 occasion, um, I don't believe that Mr. Terry was saying that, um, the guards were allowed to qualify at the gravel ranges. And I'm not. Well, we'll check that. My, my recollection is the same as judge pants, which is. Testimony from Terry that's favorable. To the board on that point, and you have. Officer is it older and you have a falsified. Which put those 3 together that seems like substantial evidence. Yeah, I mean, again, we, we went through at length numerous allegations that he made that were found to be on substantiated through investigation. So. That's our argument is that he was making statements, knowing that they were false and, or at least with reckless disregard as to whether they were true or false. And so, in that way, we distinguish direct TV because these were not good faith. Misstatements being by Mr. he was aware that he was making false claims and, or at least he was making these claims with reckless disregard as to whether they were true or false. Okay, I think we understand your position. Thank you very much. Uh, the case is submitted.
judges: Katsas, Rao, Pan